# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8055 | **DATE** | 3/31/2003 |
| **CASE TITLE** | Jerry Calvin, an individual vs. The Leitner Thomas Group, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION & ORDER: Defendants' motion for summary judgment [27-1] is granted in part and denied in part.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | **Document Number** |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 3 1 2003 | |
| ✓ | Notified counsel by telephone. | date docketed | 47 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | MAR 3 1 2003 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY CALVIN, an individual, ) | |
| ) | |
| Plaintiff, ) | No. 00 C 8055 |
| ) | Judge Joan B. Gottschall |
| v. ) | |
| ) | DOCKETED |
| THE LEITNER THOMAS GROUP, ) | |
| et al., ) | MAR 3 1 2003 |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerry Calvin brings this action against The Leitner Thomas Group ("LTG"), as well as David Thomas and Paul Leitner, alleging two counts of fraud, breach of fiduciary duty, two counts of breach of contract, and a count titled "detrimental reliance" based on a prior business relationship between the parties. The defendants have moved for summary judgment on all counts. For the reasons stated below, their motion is granted in part and denied in part.

### Background

Defendants Thomas and Leitner are in the business of buying, managing, and selling companies with other investors. After a particular company is sold, Thomas and Leitner provide management oversight in return for a management fee. In August 1997, Thomas and Leitner began to consider the acquisition of Aurora Custom Machining ("Aurora"), a closely-held custom machine shop in Aurora, Illinois. In May 1997, Aurora received a letter from General Motors Locomotive Group ("GMLG"), its biggest customer, stating that GMLG anticipated a significant increase in locomotive production in 1998 by as much as 50%. In addition, Thomas and Leitner met with a Senior Buyer from GMLG who told them that Aurora should expect up to a 50% increase in orders.

Thomas and Leitner's plan for Aurora included bundling it for resale with another company already owned by Thomas and Leitner, Ingersoll Products Company ("Ingersoll").

After a national search, Thomas and Leitner approached Jerry Calvin (who then resided in New Hampshire) as a potential executive officer for Aurora. It is undisputed that Thomas and Leitner told Calvin that they intended to sell Aurora with Ingersoll within six months. According to Calvin, Thomas and Leitner promised him that he would be employed by Aurora until it sold. Thomas and Leitner contend that they told Calvin that his employment could be long-term or short-term, depending on whether a sale could be achieved within six months. Calvin also maintains that Thomas and Leitner told him that Aurora had a "written commitment" from GMLG for a 50% increase in orders. Thomas and Leitner dispute that they told Calvin there was a "written commitment," asserting instead that, based on the letter from GMLG, as well as the meeting with GMLG, they informed Calvin that they believed that GMLG would increase its orders by 50%. They invited Calvin to visit Aurora for himself to evaluate whether it would be a favorable acquisition. Calvin made two trips to Aurora and met with personnel there. He did not ask to review any documents, including any GMLG "written commitment," during either visit. On January 12, 1998, Thomas and Leitner sent Calvin a letter ("employment agreement") offering Calvin the position of President of Aurora and a seat on Aurora's board. The letter listed their proposed terms of employment. Calvin counter-signed the offer letter and wrote "accepted" next to his signature.

Calvin asserts that in February 1998, while reviewing blanket purchase orders to Aurora, he discovered for the first time that there was no "written commitment" from GMLG to increase orders by 50%. On July 28, 2000, Calvin sold his home in New Hampshire and subsequently purchased a home in Illinois in August 2000. He also joined a country club in Illinois in August 2000. Since

discovering that there was no "written commitment," Calvin remained employed by Aurora for an additional two and a half years until he was ultimately terminated in September 2000. Prior to Calvin's termination, Aurora and Ingersoll were not sold.

## Analysis

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once the moving party shows that there is no genuine issue of material fact, the burden shifts to the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### I.   Counts I and II: Fraud

In Illinois, the elements of common law fraud are: (1) a false statement of material fact, (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the statement; (5) plaintiff's damages resulting from reliance on the statement. *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 648 (1st Dist. 2001). Calvin asserts two counts of fraud in relation to the alleged "written commitment" (Count I) and an alleged promise to employ him until Aurora was sold (Count II).

Calvin's first fraud claim alleges that the defendants lied to Calvin when they told him that they had received a "written commitment" confirming that GMLG would increase its orders to Aurora by 50%. According to Calvin, the defendants told him that, in light of the commitment from

3

GMLG to increase orders, Aurora would meet certain earnings levels (upon which his bonus was based). Calvin maintains that the bonus was the primary reason he accepted the defendants' offer of employment. In addition, Calvin argues that he reasonably relied upon the defendants' statement regarding the GMLG written commitment in accepting the defendants' offer of employment. Calvin asserts that he had no reason to doubt the veracity of the defendants' statement and, therefore, had no affirmative duty to perform a "due diligence" type investigation of Aurora.

In response, the defendants argue that Calvin fails to satisfy the first element of fraud – the false statement of material fact – and the fourth element – plaintiff's reliance on the alleged statement. Defendants maintain that they never told Calvin that GMLG had provided a written commitment regarding future orders. Instead, they claim that they told Calvin that GMLG had indicated that it intended to increase its purchase orders in the future, but never told Calvin that they had a commitment in writing. In addition, the defendants argue that even if such a statement were made, it would have been unreasonable for Calvin to rely on such a statement in light of his opportunity to investigate and review the financial records of Aurora during his two initial trips.

The court finds the factual dispute over whether or not the defendants told Calvin they had a written commitment from GM to be material to the disposition of the first fraud claim. In fact, the parties agree that whether or not the defendants told Calvin they had a "written commitment" is a disputed fact. In addition, the question of whether an individual's reliance was reasonable must be considered in light of all the circumstances. *Kolsun v. Vembu*, 869 F. Supp. 1315, 1328-29 (N.D. Ill. 1994) (finding reasonableness of reliance to be a disputed question of fact). Although they argue that Calvin should have investigated the existence of the "written commitment," the defendants fail to explain why Calvin had such a duty with respect to that particular statement, or why Calvin should

4

have had reason to know that their representation was not reliable. The court cannot say as a matter of law that it was unreasonable for Calvin to rely on the defendants' alleged misrepresentation. Therefore, defendant's motion for summary judgment on Claim I is denied.

Calvin's second fraud claim stems from the defendants' 1999 acquisition of Brogdon Tool & Die, Inc. ("Brogdon"), an aerospace manufacturing company. According to Calvin, he performed all the work necessary to investigate and acquire Brogdon at the request of the defendants. Calvin argues that in exchange for his efforts in acquiring Brogdon, the defendants promised him – but never delivered – the position of Chief Executive Officer of Brogdon, an uncapped bonus, and options for up to 10% of Brogdon stock (with vesting to begin one year from the defendants' acquisition of the company). Calvin argues that the defendants made these promises, which they knew they had no intention of keeping, for the purpose of inducing Calvin to lead the Brogdon acquisition. Calvin argues that in reliance upon these promises, he performed the services needed to acquire Brogdon.[1]

Defendants argue that Calvin has pled a "promissory fraud" claim which is not recognized by Illinois. "Promissory fraud" is premised on a claim of fraud based on statements about future developments, expectations, or contingencies. *Ault v. C.C. Serv., Inc.*, 232 Ill. App. 3d 269, 271 (3d. Dist. 1992). Defendants contend that Calvin's allegations demonstrate, at best, only "broken promises" by the defendants rather than material misstatements of present facts. They further argue that Calvin's assertions regarding fraudulent intent on the part of the defendants is negated by the

---

[1] The court notes that Calvin has never set forth a claim for breach of contract relating to the Brogdon deal. The court, therefore, will not address the assertion made in Calvin's response brief that the defendants breached an oral contract with respect to work done by Calvin in acquiring Brogdon.

fact that the Brogdon acquisition occurred a year and a half before the decision to terminate Calvin. While acknowledging that Illinois does recognize a narrow exception where a "scheme to defraud" may be actionable, the defendants argue that Calvin's allegations concerning Brogdon fail to meet that exception. Defendants argue that Calvin's failure to allege a series of events precludes application of the exception.

Under Illinois law, a statement regarding future events or circumstances cannot form the basis for a fraud claim. *Madison Assocs. v. Bass*, 158 Ill. App. 3d 526, 540 (1st Dist. 1987). This rule applies even if the representation is made without a present intention to perform. *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp.*, 131 Ill. 2d 145, 168 (Ill. 1989). However, Illinois courts have carved out an exception to this rule where promises are actionable if "'the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud.'" *Id.* (concluding that eleven specific false promises of future payment to induce plaintiff to continue supplying goods to defendant's principal fit within this exception) (citations omitted). Here, with no coherent explanation, Calvin asserts that he has pled a claim for promissory fraud, *and* that his allegations surrounding the Brogdon deal meet the exception for a "scheme to defraud." Despite this attempt, the court concludes that Calvin's promissory fraud claim cannot stand as it is not a viable claim in Illinois.

Calvin has failed to present the court with evidence of a "scheme" to defraud him. A plaintiff asserting a promissory fraud scheme must surmount a "deliberately high" burden. *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992). Under Illinois law, a scheme to defraud exists where a defendant: (1) lies repeatedly to a single promisee; or (2) lies at least once to multiple promisees. *Allied Vision Group, Inc. v. RLI Vision Corp.*, No. 95 C 3783, 1997 WL 417394, at *4 (N.D. Ill. July

22, 1997). While one lie to one person may be actionable if the lie is "particularly egregious," "[m]ore often, a scheme to defraud includes multiple instances of misconduct." *Id.* In this case, Calvin attempts to argue that a single occurrence – defendants' alleged promises regarding the Brogdon deal – constitutes a "scheme to defraud." The court disagrees that a single occurrence involving a particular party is sufficient to qualify as a "scheme." Further, even assuming that Calvin had argued that the initial alleged misrepresentation of a "written commitment" should also be considered, the court concludes that Calvin has failed to present sufficient evidence of a series of events necessary to establish any scheme to defraud Calvin. For all of the above reasons, defendants' motion for summary judgment as to Count II is granted.

## II. Count III: Breach of Fiduciary Duty

In order to show a breach of a fiduciary duty, Calvin must prove: (1) the existence of a duty owed to him; (2) a breach of that duty; (3) a proximately-caused injury resulting from the breach. *Sain v. Nagel*, 997 F. Supp. 1002, 1016 (N.D. Ill. 1998). Defendants argue that they are entitled to summary judgment on this claim because Calvin was not a fiduciary of the defendants, and was therefore never owed a fiduciary duty.

It is undisputed that Calvin was not owed a fiduciary duty by the defendants. Calvin has put forth no evidence to establish a disputed material fact on this question. Because Calvin failed to show a disputed issue of material fact on this issue, defendants' motion for summary judgment on Count III is granted.

## III. Count IV: Breach of Contract

In January 1998, Calvin alleges that he and the defendants created an oral contract agreeing that Calvin would remain employed by Aurora until the company was sold. Calvin claims that the

defendants breached this contract by terminating him before Aurora was sold. Defendants argue that this breach of contract claim must fail as it is premised on parol evidence which may not be considered in light of Calvin's employment agreement. Defendants argue that Calvin is impermissibly attempting to add a term of duration – until Aurora is sold – to the written employment agreement, which is complete on its face. Defendants argue that where a written agreement is complete on its face, all prior agreements on the same subject matter are excluded by the parol evidence rule.

Under Illinois law, the threshold question with respect to the admission of parol evidence is whether the contract at issue is fully integrated: that is, whether the employment agreement was intended by the parties to be a final and complete expression of their agreement. *Merk v. Jewel Food Stores, Inc.*, 945 F.2d 889, 892 (7th Cir. 1991). If the contract is deemed fully integrated, then parol evidence should not be admitted to add another term to the agreement. *Id.* at 893 (citations omitted). If the document, however, is deemed only partially integrated, then parol evidence may be admitted, but only to supplement – and not contradict – its terms. *Id.* A party may not introduce parol evidence to show additional, consistent terms of a contract unless the writing is incomplete or ambiguous. *Geoquest Productions, Ltd. v. Embassy Home Enter.*, 299 Ill. App. 3d 41, 44-45 (1st Dist. 1992). The determination of whether a given instrument is fully or partially integrated is a question of law. *Merk*, 945 F.2d at 893 (citing *Calder v. Camp Grove State Bank*, 892 F.2d 629, 631-32 (7th Cir. 1990)).

Based on a review of the employment agreement, the court finds the contract at issue to be fully integrated. The employment agreement lists the following terms of employment with specificity: Calvin's position as President and General Manager of Aurora, including a seat on the

Board of Directors; an annual salary of $200,000; a detailed bonus calculation based on Aurora's financial earnings; a bonus occurring at the time of the sale of Aurora provided Calvin is still an employee; the option to purchase 2,545 shares of Ingersoll stock for $100 per share; incentive options of an additional 1,092 shares subject to a specified financial performance test; and vacation, transportation and moving benefits. While the employment agreement is silent as to duration, the court does not find that this absence renders the contract unintegrated. It is well-established in Illinois that employment contracts that are silent as to duration are deemed to be at-will contracts. *Barinikas v. Clarklift of Chicago North, Inc.*, 508 F. Supp. 959, 960 (N.D. Ill. 1981). Therefore, under the employment agreement, Calvin was an at-will employee. *Id.* In light of this rule, the court finds that the employment agreement set forth the terms essential to a complete agreement. *White v. Am. Elec. Fusion Corp.*, 328 Ill. App. 128 (1st Dist. 1946) (offer of employment was fully integrated despite being silent on duration; plaintiff was an at-will employee who could not introduce parol evidence to establish that he had been hired for a specific amount of time); *Lewis v. Finetex, Inc.*, 488 F. Supp. 12, 14 (D.S.C. 1977) (same). The agreement makes no mention of any outside agreement and it seems probable that a side agreement, in which the defendants agreed to employ Calvin until the sale of Aurora went through, is the type of agreement that would have likely been included in Calvin's employment agreement. *Steinke v. Sungard Fin. Sys., Inc.*, 121 F.3d 763, 770 (1st Cir. 1997) (acknowledging that parol evidence is inadmissible where the subject matter of the oral contract "would naturally and normally" be included in the written agreement). Thus, the court concludes that the written contract is a complete integration of the parties' agreement. As a result, the court will not consider any parol evidence to prove that the parties had agreed that Calvin would be employed until Aurora was sold.

Even if the court were to find that the employment agreement was only partially integrated, the outcome would be the same. Assuming that the employment agreement was only partially integrated, the court could consider parol evidence that was consistent with the stated terms of the agreement. Calvin's suggestion that the defendants promised to employ him until Aurora was sold contradicts that section of the employment agreement dealing with the bonus Calvin would receive upon the sale of Aurora. Specifically, the employment agreement states: "At the time of sale of all of the Capital Stock or assets of Aurora you shall be paid an additional $100,000 bonus, *provided you are an employee of Aurora at the time of sale*." (Def. Statement of Material Facts ("SMF") ¶ 31. (emphasis added).) This statement contemplates the possibility that Calvin may not be employed by Aurora at the time it was sold. This acknowledgment would be directly contradicted by Calvin's parol evidence that the parties agreed that he would remain employed until the time of the sale.

Calvin's argument that the "Logistics" section of the employment agreement supports consideration of the parol evidence is not persuasive. While it is true that Aurora agreed to pay Calvin's "transitional lodging expenses" for five months, that section, when viewed in its totality, does not suggest that Calvin would be in Illinois for only five or six months. Instead, the pertinent section states that:

> The Company would agree to pay for your transitional lodging expenses *while you find a permanent residence in the Chicagoland area* until May 1, 1998. We would anticipate a start date coincident with the purchase of Aurora or within the next 14 days. *We understand that you intend to establish a permanent residence in the Chicagoland area no later that June 30, 1998.*

(Def. SMF ¶ 31 (emphasis added).) The language actually seems to anticipate both a short-term stay (based on the five month provision for lodging expenses) *and* a long-term stay (based on the references to a permanent residence). In any event, it does not support Calvin's argument that the

10

employment agreement was set up with a six-month window (the time anticipated to sell Aurora) solely in mind.

In light of the above, Calvin would be precluded from introducing parol evidence to support his first breach of contract claim. The court, therefore, concludes that there are no material facts in dispute and grants defendants' motion for summary judgment on Count IV.

## IV. Count V: Breach of Contract

Calvin's second breach of contract claim purports to have two bases. The first basis is premised on the duty of good faith and fair dealing inherent in all contracts in Illinois. To the extent Calvin argues that defendants have breached a duty of good faith and fair dealing, he has not stated a viable cause of action. *Indust. Spec. Chem., Inc. v. Cummins Engine Co., Inc.*, 902 F. Supp. 805, 811 (N.D. Ill. 1995) (stating that a breach of the duty of good faith and fair dealing does not create an independent cause of action). Defendants' motion for summary judgment on Count V is granted as to the breach of the duty of good faith and fair dealing.

Calvin also asserts that Count V is based on an alleged contract agreed to by the parties with respect to services Calvin provided to Ingersoll. Calvin alleges that "[n]o later than July of 1999," Calvin and the defendants agreed that Calvin would have the opportunity to exercise 500 Ingersoll stock options in exchange for his services in connection with the "turnaround of Ingersoll." (Compl. at ¶ 73.) Calvin concludes that when the defendants fired him in September 2000, they breached this oral contract.

There is a written, unambiguous Stock Option Agreement ("Agreement") signed by both Calvin and Ingersoll that controls the exercise of the stock options Calvin received for his work at Ingersoll. It is undisputed that for his services to Ingersoll, Calvin was offered 500 Ingersoll stock

11

options at $100 per share, vesting annually over a period of five years. It is further undisputed that if Calvin was terminated for any reason other than for cause, the Agreement provided for immediate vesting of those options which would have become vested during that year. Also undisputed is the fact that Calvin never exercised his Ingersoll stock options after his termination, despite a 90 day window in which to do so. While not entirely clear to the court, Calvin's theory in Count V appears to be that his oral contract should trump the vesting terms of the Agreement. Calvin has presented no evidence suggesting that consideration of parol evidence is appropriate here. The Agreement is fully integrated and the court does not conclude that any part of it is ambiguous. Therefore, to the extent Calvin argues that his alleged oral contract should trump the Agreement, any evidence relating to the alleged oral contract is parol and may not be considered by the court. In light of this, defendants' motion for summary judgment is granted as to Calvin's breach of contract claim based on the Ingersoll stock options.

## V.     Count VI: Detrimental Reliance[2]

Defendants argue that Calvin's claim for "Detrimental Reliance" must fail because it is not a cognizable cause of action in Illinois. They assert that detrimental reliance is merely one of the elements of the cause of action for promissory estoppel. *Wagner Excello Foods, Inc. v. Fearn Intern., Inc.*, 235 Ill. App. 3d 224, 234 (1st Dist. 1992). The court agrees and concludes that Calvin has not pled a cognizable cause of action under Illinois law.

In his response brief, Calvin denies that he alleged a cause of action for promissory estoppel (as suggested by the defendants), instead maintaining for the first time that he has put forward a

---

[2] Plaintiff's complaint lists "Detrimental Reliance" as "Count V." Because Calvin's second breach of contract claim is listed as Count V, the court will refer to "Detrimental Reliance" as Count VI.

claim for "estoppel by silence" even though he did not plead Count VI as such in his complaint. Even if this court were to accept Calvin's last-minute attempt to re-characterize Count VI, Calvin has failed to provide evidence supporting a claim of estoppel. Calvin alleges that the defendants had a duty in August 2000 (before he bought a new house in Illinois and joined a country club) to tell him that they were going to fire him in September. First, Calvin presents no evidence that the defendants had decided in August 2000 that they were going to terminate him the next month. Second, Calvin has not alleged any "special relationship" between him and the defendants which would give rise to an affirmative duty to speak on the part of the defendants. *Marks v. Rueben H. Donnelly, Inc.*, 260 Ill. App. 3d 1042, 1052 (1st Dist. 1994) (estoppel cannot be based on party's silence unless that party had affirmative duty to speak, which may arise when there is "special relationship" between the parties). Therefore, defendant's motion for summary judgment based on Count VI is granted.

## VI.   The Leitner Thomas Group

Defendants argue LTG is not a proper defendant because it is not a partnership recognized by law. According to the defendants, Thomas and Leitner do not operate with a formal or written agreement, have no other partners, are not organized under the law of any state, and conduct business with varied business investors at different times. In light of the fact that LTG is not a "partnership organized under the laws of the State of New York" as alleged by Calvin, defendants argue that LTG should be granted summary judgment on all counts.

In support of a finding that LTG is a partnership, Calvin argues that Leitner and Thomas share profits and losses "as principals." (Calvin Resp. at 15.) Calvin argues that despite the fact that LTG has no written partnership agreement, it nevertheless should be deemed one in light of the

following facts: both Leitner and Thomas have their names on the office lease of LTG; they share the management fees, expenses and shares of acquired companies equally; they are the incorporators of their corporate acquisitions; and both signed the employment agreement with Calvin.

Parties may create a partnership under New York law[3] despite the absence of a formal partnership agreement. *Cohen v. Biernoff*, 84 A.D.2d 802 (N.Y. App. Div. 1981). Among the factors to be considered in determining whether a partnership was created are: the intent of the parties, whether there was joint control and management of the business, whether there was sharing of the profits as well as the losses, and whether there was a combination of property, skill or knowledge. *Cleland v. Thirion*, 268 A.D.2d 842, 843 (N.Y. App. Div. 2000). Despite the fact that it is undisputed that Leitner and Thomas shared profits and expenses, the sharing of profits is not dispositive to the question of partnership. *Ramirez v. Goldberg*, 82 A.D.2d 850, 852 (N.Y. App. Div. 1981); *Kyle v. Ford*, 184 A.D.2d 1036, 1037 (N.Y. App. Div. 1992) ("No one factor is determinative; it is necessary to examine the parties' relationship as a whole . . . ."). However, Calvin does present evidence from which a fact finder could reasonably conclude that a partnership existed. In light of the highly factual inquiry necessary to determine whether or not LTG is a partnership under New York law, the court finds that there are disputed issues of material fact concerning the legal status of LTG. *Szot v. Saridis*, 204 A.D.2d 885, 886 (N.Y. App. Div. 1994) (affirming denial of defendants' motion for summary judgment based on existence of fact issues surrounding question of partnership). Therefore, defendants' motion for summary judgment on all counts as to the Leitner Thomas Group is denied.

---

[3] Because Calvin alleged that LTG was a partnership formed under New York law, the court will analyze the partnership question under New York law.

14

## Conclusion

For the reasons explained above, the defendants' motion for summary judgment is granted in part and denied in part.

**ENTERED:**

JOAN B. GOTTSCHALL
United States District Judge

Dated: March 31, 2003